**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| RYAN SMITH, | ) |
|            Plaintiff, | ) |
| v. | ) Case No. _____ |
| NUSTAR ENERGY L.P., BRADLEY BARRON, J. DAN BATES, JELYNNE LEBLANC BURLEY, WILLIAM B. BURNETT, ED GRIER, DAN HILL, ROBERT MUNCH, W. GRADY ROSIER, MARTIN SALINAS, JR., and SUZANNE WADE, | ) **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br>)<br>) **JURY TRIAL DEMANDED** |
|            Defendants. | ) |

Plaintiff Ryan Smith ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. This is a unitholder action brought by Plaintiff against NuStar Energy L.P. ("NuStar" or the "Partnership") and the members of the Board of Directors (the "Board" or the "Individual Defendants") of NuStar GP, LLC ("NuStar Managing GP"), which is the sole general partner of NuStar's sole general partner, Riverwalk Logistics, L.P. ("NuStar GP"), for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to combine NuStar with Sunoco LP ("Sunoco") (the "Proposed Transaction").

2. On January 22, 2024, NuStar, NuStar GP, and NuStar Managing GP entered into an Agreement and Plan of Merger with Sunoco, Sunoco's wholly owned subsidiary, Saturn

Merger Sub, LLC ("Merger Sub"), and Sunoco's sole general partner, Sunoco GP LLC ("Sunoco GP")[1] (the "Merger Agreement").  Pursuant to the Merger Agreement, each common unit of NuStar will be converted into the right to receive 0.400 of a common unit of Sunoco.  In addition, prior to the completion of the Proposed Transaction, NuStar will declare and pay a special distribution of $0.212 per common unit to NuStar common unitholders.  Upon closing of the Proposed Transaction, Sunoco unitholders will own approximately sixty-two percent and NuStar unitholders will own approximately thirty-eight percent, of the combined partnership.

3. On April 3, 2024, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that NuStar unitholders vote their units in favor of the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (i) the financial projections for NuStar, Sunoco and the pro forma partnership; (ii) the financial analyses that support the fairness opinion provided by the Partnership's financial advisor, Barclays Capital Inc. ("Barclays"); and (iii) potential conflicts of interest faced by Barclays.

4. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as NuStar unitholders need such information in order to make a fully informed decision in connection with the Proposed Transaction.

5. The special meeting for NuStar unitholders to vote on the Proposed Transaction is currently scheduled for May 1, 2024.  It is imperative that such Exchange Act violations are promptly cured to enable Plaintiff and NuStar's other unitholders to make an informed decision

---

[1] Sunoco GP is wholly owned by Energy Transfer LP ("Energy Transfer").

whether to vote their units in favor of the Proposed Transaction. Therefore, Plaintiff seeks to enjoin the unitholder vote unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper under 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of NuStar common units.

10. Defendant NuStar is a Delaware limited partnership, with its principal executive offices located at 19003 IH-10 West, San Antonio, Texas 78257. NuStar's units trade on the New York Stock Exchange under the ticker symbol "NS."

11. Defendant Bradley Barron has been Chief Executive Officer, President, Chairman of the Board and a director of NuStar Managing GP at all relevant times.

12. Defendant J. Dan Bates has been a director of NuStar Managing GP at all relevant times.

3

13. Defendant Jelynne LeBlanc Burley has been a director of NuStar Managing GP at all relevant times.

14. Defendant William B. Burnett has been a director of NuStar Managing GP at all relevant times.

15. Defendant Ed Grier has been a director of NuStar Managing GP at all relevant times.

16. Defendant Dan Hill has been the lead director of NuStar Managing GP at all relevant times.

17. Defendant Robert Munch has been a director of NuStar Managing GP at all relevant times.

18. Defendant W. Grady Rosier has been a director of NuStar Managing GP at all relevant times.

19. Defendant Martin Salinas, Jr. has been a director of NuStar Managing GP at all relevant times.

20. Defendant Suzanne Wade has been a director of NuStar Managing GP at all relevant times.

21. Defendants identified in paragraphs 11-20 are collectively referred to herein as the "Board" or the "Individual Defendants."

**SUBSTANTIVE ALLEGATIONS**

**Background of the Partnership**

22. NuStar is a publicly traded master limited partnership engaged in the transportation, terminalling, and storage of petroleum products and renewable fuels, and transportation of anhydrous ammonia in the United States and internationally. NuStar operates through three segments: Pipeline, Storage, and Fuels Marketing. The Pipeline segment is engaged in the transportation of refined products, crude oil, and anhydrous ammonia. The Storage segment offers storage, handling, and other services for refined products, crude oil, specialty chemicals, renewable fuels, and other liquids. The Fuels Marketing segment provides bunkering operations in the Gulf Coast and blending operations with Central East System primarily for ship owners, marketers, and traders.

**The Proposed Transaction**

23. On January 22, 2024, NuStar announced that it had entered into the Proposed Transaction, stating, in relevant part:

> DALLAS--(BUSINESS WIRE) --Jan. 22, 2024-- Sunoco LP (NYSE: SUN) ("Sunoco" or the "Partnership") and NuStar Energy L.P. (NYSE: NS) ("NuStar") announced today that the parties have entered into a definitive agreement whereby Sunoco will acquire NuStar in an all-equity transaction valued at approximately $7.3 billion, including assumed debt.
>
> **Transaction Details**
>
> Under the terms of the agreement, NuStar common unitholders will receive 0.400 Sunoco common units for each NuStar common unit, implying a 24% premium based on the 30-day VWAP's of both NuStar and Sunoco as of January 19, 2024. Sunoco has secured a $1.6 billion 364-day bridge term loan to refinance NuStar's Series A, B and C Preferred Units, Subordinated Notes, Revolving Credit Facility, and Receivables Financing Agreement.
>
> The transaction has been unanimously approved by the board of directors of both companies and is expected to close in the second quarter of 2024 upon the

satisfaction of closing conditions, including approval by NuStar's unitholders and customary regulatory approvals.[1]

**Strategic Rationale**

- **Increases Stability:** Diversifies business, adds scale, and captures benefits of vertical integration by combining two stable businesses

- **Strengthens Financial Foundation:** Continues Sunoco's successful capital allocation strategy on a larger scale, improving the Partnership's credit profile, and supporting a growing distribution

- **Enhances Growth:** More cash flow generation for reinvestment and growth across an expanded opportunity set

**Positive Financial Outlook**

- **Accretion**: Immediately accretive with 10%+ accretion to distributable cash flow per LP unit by the third year following close

- **Synergies:** At least $150 million of run-rate synergies by the third year following close

- **Financial Savings:** Approximately $50 million per year of additional cash flow from refinancing high-cost floating rate capital

- **Leverage:** Will achieve leverage target of 4.0x within 12-18 months post close

- **Distribution Growth:** Supports continued distribution growth while maintaining strong coverage

[1] Prior to closing, NuStar will make a cash distribution of $0.212 per common unit to its common unitholders.

* * *

**Advisors**

Truist Securities served as the exclusive financial advisor to Sunoco. Truist and Bank of America provided committed financing. Weil, Gotshal & Manges LLP and Vinson & Elkins LLP acted as Sunoco's legal advisors.

Barclays served as the exclusive financial advisor to NuStar. Wachtell, Lipton, Rosen & Katz and Sidley Austin LLP acted as NuStar's legal advisors.

**The Materially Incomplete and Misleading Proxy Statement**

24. On April 3, 2024, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC. The Proxy Statement, which recommends that NuStar unitholders vote their units in favor of the Proposed Transaction, fails to disclose material information to Partnership unitholders, or provides them with materially misleading information, concerning: (i) the financial projections for NuStar, Sunoco and the pro forma partnership; (ii) the financial analyses that support the fairness opinion provided by the Partnership's financial advisor, Barclays; and (iii) potential conflicts of interest faced by Barclays.

*Material Misrepresentations and/or Omissions Concerning the Financial Projections for NuStar, Sunoco and the Pro Forma Partnership*

25. The Proxy Statement fails to disclose material information concerning the financial projections for NuStar, Sunoco and the pro forma partnership.

26. For example, with respect to the "NuStar unaudited prospective financial information," the Proxy Statement fails to disclose all line items underlying NuStar's: (i) Adjusted EBITDA; (ii) Distributable Cash Flow; and (iii) Unlevered Free Cash Flow.

27. With respect to the "Sunoco standalone projections," the Proxy Statement fails to disclose all line items underlying Sunoco's: (i) Adjusted EBITDA; (ii) Distributable Cash Flow; and (iii) Unlevered Free Cash Flow.

28. With respect to the "Sunoco pro forma projections," the Proxy Statement fails to disclose all line items underlying the pro forma partnership's: (i) Adjusted EBITDA; (ii) Distributable Cash Flow; and (iii) Free Cash Flow.

29. In addition, according to the Proxy Statement, "prior to the execution of the Merger Agreement, Sunoco's management provided to NuStar Managing GP's management, certain nonpublic, internal financial projections regarding Sunoco's future operations[.]" Proxy Statement

at 79. The Proxy Statement fails, however, to disclose a summary of Sunoco management's projections for Sunoco.

*Material Misrepresentations and/or Omissions Concerning Barclays' Financial Analyses*

30. The Proxy Statement fails to disclose material information concerning Barclays' financial analyses.

31. With respect to Barclays' *Discounted Cash Flow Analysis - NuStar*, the Proxy Statement fails to disclose a quantification of: (i) NuStar's terminal values; (ii) the inputs and assumptions underlying the discount rate range of 8.5% to 10.0%; (iii) NuStar's estimated net debt and preferred equity; and (iv) NuStar's fully diluted outstanding units.

32. With respect to Barclays' *Discounted Cash Flow Analysis - Sunoco*, the Proxy Statement fails to disclose a quantification of: (i) Sunoco's terminal values; (ii) the inputs and assumptions underlying the discount rate range of 8.0% to 9.0%; (iii) Sunoco's estimated net debt; (iv) the market value of the general partner equity value; and (v) Sunoco's fully diluted outstanding units.

33. With respect to Barclays' *Distribution Discount Analysis - NuStar*, the Proxy Statement fails to disclose a quantification of: (i) NuStar's 2029 estimated distribution per unit; and (ii) the inputs and assumptions underlying the discount rate range of 10.5% to 11.5%.

34. With respect to Barclays' *Distribution Discount Analysis - Sunoco*, the Proxy Statement fails to disclose a quantification of: (i) Sunoco's 2029 estimated distribution per unit; and (ii) the inputs and assumptions underlying the discount rate range of 9.5% to 10.5%.

35. With respect to Barclays' *Selected Comparable Company Analysis - NuStar* and *Selected Comparable Company Analysis - Sunoco*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected companies analyzed by Barclays.

36. With respect to Barclays' *Selected Precedent Transaction Analysis – NuStar* and *Selected Precedent Transaction Analysis - Sunoco*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected transactions analyzed by Barclays.

37. With respect to Barclays' *Equity Research Price Targets Analysis* of NuStar and Sunoco, the Proxy Statement fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

38. With respect to Barclays' *Transaction Premium Analysis*, the Proxy Statement fails to disclose: (i) the identities of the transactions observed; and (ii) the individual premiums observed for each transaction.

39. With respect to Barclays' *Pro Forma Merger Consequences Analysis*, the Proxy Statement fails to disclose a quantification of: (i) the pro forma per unit distributable cash flow for the combined partnership's accretion to Sunoco standalone in 2024 and 2025; (ii) the pro forma per unit distributable cash flow for the combined partnership's dilution to NuStar standalone in 2024 and 2025; and (iii) the pro forma distribution per unit for the combined partnership's dilution to NuStar standalone in 2024 and 2025.

*Material Misrepresentations and/or Omissions Concerning Barclays' Potential Conflicts of Interest*

40. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by Barclays.

41. For example, the Proxy Statement sets forth:

> Barclays and its affiliates in the past have provided, currently are providing, or in the future may provide, investment banking services to Energy Transfer, and certain of its affiliates and have received or in the future may receive customary fees for rendering such services, including having acted or acting as arranger, bookrunner

9

and/or lender for Energy Transfer and certain of its affiliates in connection with certain financing transactions.

*Id.* at 74.  The Proxy Statement, however, fails to disclose a quantification of the fees Barclays has received, or expects to receive, in connection with the services it has provided, or is providing, to Energy Transfer or its affiliates.

42. In sum, the omission of the above-referenced information renders statements in the "NuStar and Sunoco Unaudited Prospective Financial Information Reviewed by the NuStar Managing GP Board and Barclays," "Opinion of NuStar's Financial Advisor," and "Background of the Merger" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the unitholder vote, Plaintiff and the other unitholders of NuStar will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and NuStar**

43. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

44. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9.  NuStar is liable as the issuer of these statements.

45. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Partnership, the Individual

Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

46. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

47. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable unitholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to unitholders.

48. The Proxy Statement is an essential link in causing Plaintiff and the Partnership's unitholders to approve the Proposed Transaction.

49. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

50. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

51. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

52. The Individual Defendants acted as controlling persons of NuStar within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of NuStar and participation in and/or awareness of the Partnership's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly,

11

the decision making of the Partnership, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Partnership, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

55. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of NuStar, and against defendants, as follows:

  A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the unitholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

  B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

  C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

  D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

  E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 15, 2024

**OF COUNSEL:**

**ACOCELLI LAW, PLLC**
Richard A. Acocelli
53 Hill Street, Suite 152
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

**LONG LAW, LLC**

By /s/ *Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

*Attorneys for Plaintiff*